Mr. Schlaug will argue, and we'd like to, under the circumstances, to reserve four minutes, but with the court's guidance, perhaps we can. Let's sort this out as best we can. What we have here is two appeals. You're appealing the arbitration change of venue clause. They're appealing the merits. We've set it for 15 minutes a side. Why don't we do it this way, and I'll ask you if it's acceptable to all sides. What I'm inclined to do is, with respect to the arbitration, 10 minutes a side, and then with respect to the merits, 10 minutes a side. And why don't we just treat you as appellants with respect to the arbitration? You go forward with your 10 minutes, save as much as you like, then have rebuttal. We'll just treat that as a separate argument. And then, once we're finished with the argument on the arbitration, assuming then that we're going forward to the next question, which we would if it goes the way Judge Patel had it go, then we've got a separate appeal on the merits of the case in the district court. That'll then be a 10-minute argument in which you're the appellant. You go first and save whatever time you want for rebuttal. Will that work? And with regard to the arbitration issue, the first appeal, you would deserve two minutes a minute. Fine. Can I just clarify? Sure. So we'll do 10 and 10 and then 10 and 10? Correct. Yeah, so we're expanding the total argument time by a little bit. Yeah. Okay, so let's just keep them clean. So first we're doing 10 and 10 with respect to the arbitration question. Okay. Good morning, Your Honor. Paul Schloud for Alienware. On the arbitration issue, this case is different than the telephone and bank fee cases this Court has previously decided, and that make up the bulk of the precedent on the enforceability of class waivers. And I think this case presents the question of whether the California Supreme Court meant what it said when it said it was not adopting a per se rule against class waivers. In this case, we have significant individual damages, damages that are not small, asserted over a failure of a computer, a computer problem that was sold under warranties going up to three years in length. And I think the fact that makes this case easiest is that Plaintiff Oestreicher did not put on any evidence below in support of his defense of unconscionability here. There's no evidence at all that he would not be able to individually vindicate his rights at the NAF. And we submit that in a case of this size, he wouldn't be able to. What are the damages that he's claiming individually? His individual damages are $4,000, and that's what he would claim at the NAF. For the first time in his response brief, he said, well, maybe, maybe the damages would only be a couple of hundred dollars. We think that's too late. Let's assume that the damages are $4,000. As I read the California case law on the question as to whether or not it's unconscionable to ask someone to waive a right to stay in California in class action, in other words, the clause says you go somewhere else, and as a consequence, going somewhere else, the class action is no longer available. My understanding of the rationale of the California cases is that if the individual claim is so small that realistically the claim is not pursuable as an individual claim, then the California unconscionability analysis kicks in. Is that how you understand the California cases? With a couple of clarifications, Your Honor. First of all, there is multiple parts of the Discover Bank test. It's a three-part test. But I want to make sure that this part of the record is clear. Mr. Ostroker would not have to travel to any distant forum to arbitrate his case. This is not a forum selection case. And there are some cases out there, particularly the AOL cases, that do involve forum selection cases. And I think those raise different issues and by the very nature of sending the person to the other side of the country dramatically increase the cost of pursuing an individual claim. That's not this case. He could pursue his claim actually over the Internet. He could mail in papers or he could have a hearing at the NEF. And where would that hearing take place? It would take place near his home. I'm not sure exactly how the provision works, but at least within the federal judicial district where he resides. And that has not been an issue at all in this case. And given the nature of the claim, is he likely to need a lawyer? I don't think he would need a lawyer in this case. I guess I better ask him, too, whether he thinks he might need a lawyer. Maybe I should ask his lawyer whether he thinks he needs a lawyer. I can anticipate the answer to that question. But the point here is, okay, so if we're talking about a $68 fee, $29 fee, maybe the courts don't need evidence to be put before them to conclude whether or not individuals would bring cases. This is a $4,000 case. When you add in attorney's fees and trembling damages and statutory damages, you can't even bring it in California's small claims court anymore. And, you know, in 2005, 225,000 cases were brought in small claims court. And so I think it's a fiction that people don't bring claims of this size. And certainly there's been nothing by the plaintiff who bears the burden on this issue put into the record to show that. So that's on the first prong, or the second prong of the Discover Bank test, which is are the damages predictably small. There's a little bit of a dispute in the briefs that I would clarify. Attorney's fees are available at the NAF. There's no barrier to the recovery of attorney's fees. And on what criterion or criteria are they available here in this case? Not that they're unavailable in front of the NAF, but in this case. What does that have to show if you're going to get attorney's fees? Well, he could bring his claim either under the CLRA, and then if he prevails on the CLRA, he would be able to get attorney's fees, is my understanding. He could also bring his claim under the Florida Consumer Protection Act, which also awards attorney's fees to prevailing parties. So I don't think that there's any barrier. He does make an argument that really we'd have to go through all of these documents and prove up to a great detail with experts that there's a product defect here in order to prevail on the CLRA. I think that's a little inconsistent with some of the positions he takes when he gets to dowry. But the bottom line, again, is we don't have any evidence at all. And if you look at cases like Christian from the First Circuit and the new case of American Express, you see what courts require when you have at least a not small amount of damages. You have to get a record. You have to show that people won't bring the claims. And that's what we submit he failed to do. And on that basis alone, this court ought to reverse. The second part of the Discover Bank test that we dispute here is the question of whether or not there's a fraudulent scheme. And to step back just a second, Discover Bank announced a three-part test. And outside of the computer cases that involved alimony work, I'm not sure that anyone has yet held that there is not the scheme isn't fraudulent. But we submit the prong must mean something. And if you look at cases like Discover Bank and Schroer, what you see are credit card companies and phone companies basically picking consumers' pockets, a dollar or five dollars at a time. There's no allegation like that at all here. Instead, what you have is a product that maybe is imperfect, that the consumer is complaining about, that the manufacturer may or may not have even been aware was defective when it left its product, when it left the factory, even if it was defective. Those are very different facts than the kind of fraudulent scheme. And, you know, this gets into a little bit of circularity. But the fact that Judge Patel threw out the case on the pleadings, I think, usually you're not going to have a full merits determination or pleadings determination to go on. But in this case, it gives this Court an easy way to resolve this case. You can just simply say that because the case was properly dismissed under dowry, that there is no fraudulent scheme as a matter of law under California and that the judge's decision needs to be reversed on arbitration. If we were to affirm the second part of Judge Patel's order, the part that goes to the merits, what effect, if any, would that have if we were to reverse her on the arbitration claim? That is to say, when it goes to arbitration, what utility is there to you of that finding in the second half of the case? Well, it's an interesting question. I'm not sure what the final right answer is. I'm assuming you're going to try and use it. I understand that part. We would try to use it. I mean, the reality is the NAF is a small claims model of adjudication, and good luck getting a motion granted. I mean, I think we would end up trying the case on the merits in front of the arbitrator. That's sort of the reality of arbitration. But Alienware is happy to have you decide this case on ground two and have that move the arbitration appeal. I think it's our contractual right that we can let go in this limited instance if we want to, and we are willing to do that here. So if this court affirms, as they should, Judge Patel's ruling on the 12B6 motion, our position is you do not have to reach the arbitration appeal or you can decide it simply on the basis of the fraudulent scheme problem. Okay. You're down to about two. Why don't we have him on the other side, and then you've got your time. Good morning, Your Honor. Jonathan Selbin, Leif, Cabreza, Hyman, and Bernstein on behalf of Mr. Ostreicher. May it please the Court. I want to address the issue because I think it's very important about what our burden was in terms of putting in evidence of the prohibitive cost of arbitration here because it's a very important issue, and there's a difference depending on whether you have federal law claims or state law claims, and it's a difference that I don't think Alienware has acknowledged here. Prior to the Gentry decision, which came down from the California Supreme Court on August 30, 2007, the only language California courts, the only guidance California courts provided on the issue of what our burden was, was the Discover Bank language that said predictably involves small amounts of damages. That was the language, predictably. There was no evidence in the record in Discover Bank about what that meant. The Court was sort of doing a let's talk about what a likely claim would predictably involve of this sort. The only other case that really addressed it following Discover Bank prior to Gentry was the DirecTV case, and again, there was no evidence in the record. The Court just said, what do these claims typically involve? Well, so that was the state of California law at the time that we brought our case, and they brought their motion, and it was briefed and decided by Judge Patel. So we didn't put in any evidence. We talked about the predictable value of these types of claims, and we cited the DirecTV case, and we cited a few other cases from California law that addressed the issue, and Judge Patel made her finding in that way. Now, subsequent to her opinion, Gentry came down, and I think Gentry now brings California law in line with Randolph, Christiane, the new Amex case, that say the plaintiff has a burden of putting in actual evidence of the prohibitive cost. Now, why is that important? It's important because the defense here to the arbitration is a California state law defense of unconscionability. The defense that we're asserting to arbitration is not an FAA defense. It's what the FAA permits us to do, which is to assert a California law of general applicability. So why is this unconscionable under California law? It seems to me that Judge Patel pushed the California law a little bit. Well, I think obviously the $4,000, which is the maximum amount that we could claim here, that's the value of the cost of the complaint. There are no penalties involved in this case? Well, we did assert a CLRA claim and a common law fraud claim, but remember that those kind of claims, and this is part of the unconscionability analysis here, is that particularly with the CLRA, as Judge Nelson recently wrote, any forum that doesn't allow you to effectively pursue your statutory rights violates fundamental California policy. And we think that's exactly here, because how are you going to prove on a $4,000 case that a company engaged in fraud? Well, you're going to have to show that they knew about the defect before they sold the computer. You're going to have to show that by how? By conducting substantial discovery into their R&D. You're going to have to go through all their warranty records. You're going to have to hire an expert to analyze their data, both their R&D data and their warranty data, to show that this company was on notice and knew that there was a problem here perhaps before they sold the first one, certainly before they sold yours. Now, how do I know you have to do that? Because we bring these kind of cases all the time, and that's what you have to do. If you prevail in a consumer statutory case, do you get attorney's fees? That is the one claim, and I want to clarify the record on that, too, because we did make an error in our brief, and I want to apologize to the court for that and take responsibility for it. We quoted some language that is actually from the Olmstead v. Dell case, which is also up on appeal on these very same issues in this court, and somehow that snuck into our brief here as a quote about no attorney's fees being available. And I apologize. That was an oversight on my part. But the substantive of that ---- So the answer is as to the consumer statutory ---- The answer is that if you prevail on a claim that otherwise allows you attorney's fees, you can get them at the arbitrator's discretion. But what that means is you can't do as they're suggesting. What they would have the court believe is all Mr. Oesterreicher has to do is go into his arbitration and show that his computer won't turn on, and he can win that case. Well, if this case were about a one-off situation like that, they're right, although he couldn't get his attorney's fees because he won't have proven a statutory fraud claim. But that's not what this case is about. Our case is about an inherent design defect that affects his computer and all the other computers like him, and it's about fraud. Now, if he's going to get attorney's fees, he's going to have to prove fraud. So on $4,000, what attorney is going to take a case that you have to prove fraud for on a $4,000 case? The answer is no attorney. And we've cited the case law on that. In fact, in the Zinsser case, the Akifix case, this Court said $50,000 isn't enough of a case for a complex products liability kind of proof like that where you have to hire an expert. Now, I've hired experts. I mean, if we had to go back down in light of Gentry and put in actual evidence, I could put in a declaration from an expert who worked for me on other cases like this who could explain exactly what you have to do, and it's tens of thousands of dollars' worth of work to do it. Now, again, I think it's important because Christiane, Randolph, and the other cases like that, all were Federal law cases. They were all antitrust cases, KELA cases, and the standard was different under those cases. Clearly, we had an obligation if we had a Federal law claim to have put in evidence below. Under California law, again, the standard was predictably involves small damages. So that's a very important issue. I've addressed the attorney's fee issue. The point there really is that while the quote was wrong, the substance was right, which is that we couldn't get attorney's fees unless we proved fraud, and it's not possible to prove fraud here. I want to address their Dobson case because they take us to task in their reply brief for not having answered Dobson. The Dobson language they quote is Justice Breyer sort of ruminating in dicta about what a one-off product failure case would look like. And he says, well, maybe if you were just talking about a refrigerator that didn't work, that would be one thing and that would be different, but the situation here is altogether different. This isn't that one-off product case. This isn't a case where we're claiming his computer just doesn't turn on and he wins or loses. We've claimed a design defect that affects all of these computers. It's not a one-off failure, and we've claimed fraud, and I think that's very important. I want to address briefly the AOL cases because I think the AOL cases are very important, and it's the one area where I think that Judge Patel actually got the law wrong on the choice of law burden issue, which is that we think it's very clear under the State court AOL case that the burden was actually on Alienware, on the choice of law issue, not on us. And that's very important, and I think Judge Nelson's opinion in the Federal AOL case supports this, which is that because we were alleging a CLRA claim, AOL says when the CLRA is at issue, the burden falls upon the party seeking application of another law to prove that that other law ought to apply. Now, the response that they make is, well, but that would be preempted because you can't have special treatment for consumer claims under the FAA. But the rule is a rule of general applicability. It's not a special rule just for the CLRA in the arbitration context. It says any time the CLRA is at issue in any context, and in fact, in the Federal AOL case that Judge Nelson sat on, there wasn't an arbitration issue at all. And so the burden was on AOL, or rather Alienware here, rather than us, on the choice of law issue. I don't think I have any other points that I need to make on the arbitration issue, if there are no other questions. Thank you. Thank you. And we'll hear from you again in a moment. Hi, Your Honors. I want to make one thing very clear. I think I heard O. Stryker's counsel say that under existing California law, he does bear a burden and that he didn't meet it below. But I want to clear up any misconception about what the state of the law was prior to that. Our consistent position below to Judge Patel in our briefs and at the hearing was they have an evidentiary burden and they need to meet it. And I'm not sure exactly on the time frame, but Gentry came out the same month as Judge Patel's initial order. There was no reconsideration motion that they filed on this, hey, let us reopen it and put evidence in. It was very clear to the plaintiff's bar because of cases like Christian, and even if you look back at this court's case in Ting, you will see records being made by plaintiff's counsel if they wanted to come in and claim that in a case of any kind of substantial damage size, that they would not be able to vindicate their rights below. It's a little ironic that when Justice Breyer says it's rumination, I mean, maybe that's right, but the only way to get past rumination or the speculation that O. Stryker offers is to have made a record below and they didn't. And there was some evidence put in by Alienware to the contrary that individuals do sue Alienware over single computers. And the last thing I would say, unless a panel has questions, is you don't have to reach the AOL question at all because you can resolve this case under Discover Bank. AOL only applies to, if it applies at all, to a choice of law analysis burden. Okay. Thank you very much. The case is not yet submitted. We've just heard the first half on the arbitration, and now we're hearing the second half as to which you are the appellant. Thank you, Your Honor. As this panel was already struggling with on the Long v. Hewlett-Packard appeal, this case raises very, very important questions about California consumer protection law. And specifically, and I think this addresses Judge Talman's questions in particular, it really addresses the distinction between fraud and warranty law because our position is that, yes, a company can limit its liability for warranty claims in its express written warranty. We don't think there's any question about that. I agree with counsel in the Long v. Hewlett-Packard case that you have to look at the actual warranty. But there's no question under California law, Sealy says it, Abraham v. Volkswagen. I'm sorry? It's counsel. Plaintiff's counsel. Okay. Yes, plaintiff's counsel. That didn't surprise me, but I just wanted to know. The Sealy case, the Abraham v. Volkswagen case, makes it very clear what warranty law is about. And it says that the parties can allocate between themselves who's responsible. But the key missing point in that analysis, and I really think it comes from the California Supreme Court opinion in Robinson v. Helicopter, is that it presumes that in the absence of fraud, because nobody expects to be lied to. Nobody expects to be defrauded in the context of a contract. So there's no question that a company can say, here's our warranty, and if it fails within that time period, we're responsible. And if it fails after that time period, you're responsible. That's an allocation of responsibility between two contracting parties. But what Robinson v. Helicopter makes clear, and what in particular the Kahn case makes clear, is that fraud is different. Once you're talking about fraud, you're not looking about, you're not looking at allocated risk between the two parties, because parties can't allocate risk when one is lying to the other party. And so that's the difference between fraud and warranty law. Now, fraud is about a defendant's conduct. It's about what the defendant did. That it happens to be about a product isn't what's important. It's what their conduct was. You know, counsel, one of the things that surprised me is that nobody discussed Twombly in connection with the Rule 9 issue. I think it's very important. I do, too. And I was surprised that it wasn't in either of your briefs. Yeah, I'll tell you why I think it's important, and maybe we're in agreement on it, because I think it goes to the issue of the reasonable expectations. And I'm about to get to that, because I think that the test, counsel in Long for the plaintiff said that materiality is the gatekeeper, and I agree with that. But you add to that the plausibility standard of Twombly, and that's what protects a manufacturer from a flood of cases coming in. If someone comes in and says to you in a lawsuit, I reasonably expected my pencil to last for five years regardless of how much I used it, well, that doesn't satisfy plausibility. They can plead it and say that's a reasonable expectation, but that's not a reasonable expectation. That's not a plausible reasonable expectation. So I do think Twombly comes in. Now, what have we said here? What we've said here is, and again, this distinguishes Barden and Doherty, and I want to stress that in Doherty and Barden, what they said is in the absence of any pleading as to a reasonable expectation, the only reasonable expectation the consumer can have is the length of the warranty. Okay. That's fair. Now, we pled a reasonable expectation. We pled in our case three to four years for this particular kind of product. Now, that's where Twombly comes in. Is that plausible? Well, judges have to make those determinations all the time. Is it plausible that a $4,000 computer would be expected to last three to four years rather than 90 days? I submit that the answer is yes. That's plausible. So price might be one indicia of plausibility that you would use. Market alternatives. What did other similar computers cost that were out there at the time? Well, similar computers to the computer in this case didn't cost $4,000. They cost you could have spent less. You could have spent $1,500, or you could have gone and bought a desktop for $600. So the notion that you paid more for this product is another indicia of plausibility. So I really do think that you're protected, or manufacturers are protected, from the parade of horribles that the defendants in these cases like to speculate about, because under California law, you've got to show materiality, you've got to show a reasonable expectation, and it's all got to be plausible on its face under Twombly. So that's the sort of delimiting piece of the allegations. Now, I will say, in talking about the fraud as a different issue, and I do think this is important, if Alienware is right, if Hewlett-Packard is right, if Sony is right, there are a number of these cases working their way up, then a manufacturer can issue a limited warranty and absolutely contract around its fraud. Let's take your hypothetical, Judge Fletcher, and let's take it a step further, because I think you got partway there, but I actually respectfully submit you can go a step further. Let's suppose a company builds a computer and puts a chip in it that says on day 366, the computer turns off, and the only way to turn it back on is to send the company another $1,000, and then they put a one-year warranty on it. Now, under the reasoning of Alienware, under Judge Patel's reasoning, they could do that and not disclose it. Now, if I walk in the door to buy that computer, I think it's a plausible material fact that they should disclose to me that they've put that chip in there. But because they put a one-year warranty on it, they're protected. It's a get-out-of-jail-free card. It's obvious from my questions that I agree with you in concept. Whether the particular allegations in one case or another rise to the level of what they've actually delivered to you is so far different from what they reasonably expected. Whether they knew at the time that they sold it that they were selling something that was so far different. Those are questions to be determined on the facts of the case. You've invented the case that's open and shut. It's a law school hypothetical sort of a deal. My question, actually, is not that. My question is, what do we do with 9B? I mean, how much particularity do you need to have? Right. I think that's a fair question. Fair question or not, I mean, it's right there in the case. How about this? It's the right question, or it's the question of the moment. I think that in the context of consumer fraud cases where a company necessarily is going to have more, if not all, of the information, I think it's pretty clear that there has to be somewhat of a lessening of the standard at the pleading stage. Well, that's where I'm having a problem with Twombly, because Twombly doesn't say that. No, I understand. Twombly says that you don't get to go fishing first. Right. Here's the problem, which is that in a case like this, and, again, I think you're right that Twombly obviously applies here. I think you have to look at what the other indicia are that make it plausible that you're going to be right. And what we have here is we had an expert analyze this, and we pled that we had an expert analyze this problem and say this is the type of design defect that they should have known about before they sold the first one. But where I thought you were starting to go was that consumer fraud cases are different from antitrust cases. Well, I was going to get there, too, because I think that in the context of a consumer case, and there's certainly case law that says this, that in the context of a consumer case, particularly in a corporate fraud case, and particularly, remember, this isn't a case like many securities and antitrust cases that are about particular statements, especially securities cases, particular documents. In document X on date Y, you didn't disclose Z, or you did say A. This isn't that case. What we've pled is as much as we can plead, which is that in every communication with every consumer, with the entire world, they never disclosed what we think they must have known. Now, we have to prove that. We don't get a pass on that. But remember that Clemens, for example, is at the summary judgment stage. And I think that part of what's been happening, and I think the Gerber v. Williams case is right on point here, I think Gerber's an important reminder to district courts that they shouldn't be making factual determinations at the pleading stage. I understand the plausibility Twombly standard, but they don't get to make factual determinations. So under California law, the California Supreme Court, it couldn't be more clear that materiality is a question of fact for the jury. That may be an actual quote from N'Gala, the N'Gala case, the California Supreme Court. And here we have Forge saying, well, that's not material. It's not material that the computer is going to fail. Federal standard, where at some point materiality is a question of law that can be decided on summary judgment. I think it's a mixed question that can be decided on summary judgment, but I think you get to put in the evidence that helps guide it. And Gerber says. Are you telling me that California Supreme Court cannot grant summary judgment on a materiality challenge if it decides that no reasonable jury could find that this was material? I think under the California standard, they could at the summary judgment stage. What the California Supreme Court says is that materiality is a question of fact, which it is, but as with any other question of fact, you can make a determination on summary judgment that no reasonable jury could find that. But what Gerber says is that you get to put in evidence. You get to put in anecdotes. You can put in expert testimony. You don't have to put in expert testimony. We never got there here. Now, I can tell you from doing these kind of cases, I'm pretty sure I know what I'm going to find when I get discovery. I'm going to find R&D people saying we've got a problem and salespeople saying, yeah, but we've got to get these things out the door. We'll do it on the fly. Those are the kind of – now, I don't know that. That's not in the record. But those are the kind of issues that come up on evidence. But this is a motion to dismiss. Why don't we hear from the other side? You've used up your ten minutes, but we'll make sure to give you a chance to respond. Thank you, Your Honor. Thank you. Hello again. I'm going to start with Twombly. Your name for the record. I'm sorry. I'm sorry. Paul Schlout. I'll start with Twombly. We did argue Twombly below. It was part of the record below, and we argued it in a couple of ways. One, that actually this case is not plausible, nor are the hypotheticals that Plaintiff's been offering you. But two, Twombly sets out a little bit of a shift in the ground about how much we're going to let plaintiffs go fishing if they can't say enough to establish a solid pleading. Judge Patel, I don't think, is known as a judge who will throw a case out without giving it a fair shake. When she granted the first motion to dismiss, she said, go get it right. If you don't get it right, I'm going to dismiss. Do you need more time? They had some discovery below. It's not a case where they had no discovery at all. And given that, when you look at 9B and you look at Twombly, Judge Patel did the right thing. They want to dilute 9B to the point where it will be easier to plead nondisclosure cases than affirmative misrepresentation cases. Well, I think that's right. I'm not saying how this case ought to come out. But if the allegation in the fraud case is that they told me the following things affirmatively and they were not true, it's pretty clear under the case law that 9B requires them to be okay. Who said it? What did they say? When did they say it? Da-da-da-da-da. But if the allegation is he never said nothing, what more are you supposed to say? He never said nothing. Period. You still have to show he said nothing. I understand. Well, and you have to show that the defendant had scienter. There have to be specific allegations that support scienter. You have to allege facts that show a duty to disclose. Right. But also, if you go as far as that, then if I have an affirmative misrepresentation case, I'll just plead it as a nondisclosure case. No, but if you plead it as a nondisclosure case, then you've got to prove a nondisclosure case, and I guess you just left out all of the stuff that you actually had, which was good affirmative evidence. I mean, you can choose to throw away half your case if you want to, but what I'm worried about is a rule that says if it's a nondisclosure case, and the part of the case that we're talking about focusing on under Rule 9b is the nondisclosure, I'm unable to see how we can, even under Rule 9b, ask the plaintiff to say anything other than he never said anything. The case law, however the court decides this issue, you'll be able to go and find, your clerks will find cases that say in a nondisclosure case you need a bunch of things or in a nondisclosure case. And I understand we need the other things that you said. You do need particularity with respect to scienter and all those other things, but with respect to what he did or didn't say, if he didn't say anything, all you've got to do is say he didn't say anything. I guess our view is that that's not enough, that you have to. Well, what is he supposed to say then if the problem is he had a duty to say something and he didn't say it? Once you've laid out the actual state of knowledge he had, once you've laid out that he had a duty to say it and you've done those two things with particularity, what sort of particularity can you ask for other than he said nothing? We lay it out in our brief, but what the cases say is, first of all, you need to plead the facts that show the duty, which we submit he hasn't done. I'm giving you that. Okay, we've got that. And you also need to plead facts that show you would have been aware of it had the disclosure been made. You've got that. And I don't think he's pled either of those things. But that's not what I'm asking about. I'm asking about is there any particularity beyond he said nothing that requires more than pleading he said nothing? I think you have to plead the content of the nothing, and I'm not sure that he has done that either. Maybe you can say, and nothing means nothing. There was nothing in it. I mean, I can say it three times. Well, that may be then. But we submit that's not the case, that we're not depending on that failure under 9b. There are multiple failures under 9b. But more importantly, the key issue here, the issue of Dougherty and Barden, you've heard a lot about it already this morning. I think the fair reading of those cases is we're going to protect manufacturers from this disclosure obligation in this limited circumstance. It's not a free pass. It's not a license to commit fraud. But it says because the disclosure obligations are going to be so great, because parts do break down, because the amount of information manufacturers have about probabilities is so great, unless you can show a safety problem or unless you can show speech that would shift somehow the warranty expectation, there is not going to be a duty to disclose. And I think that makes sense. It makes sense to limit the disclosure obligation to those circumstances, particularly the safety circumstance. Otherwise, what does Alienware have to disclose? Whether you use the Twombly standard of plausibility, whether you use the materiality standard, which his brief says is just anything a consumer comes and says was reasonably important to them. In a computer, how many different components are we talking about where some consumer is later going to say the performance of that component was material to me? Are you talking a 150-page Web page that has to be updated on a continuing live feed basis as complaints come in? I mean, I understand all that. This is a simpler case. The charge here is that there was a very particular problem, which was to say overheating. They put in a super-fast chip that heated the thing up a lot. That was, in fact, the selling point, that it had this great capacity so that the gamers would have a really fast game. And they didn't resolve the overheating problem that was thereby created. So we're talking about a very specific problem. We don't have a whole long list of problems. That's right. But that's only because that's the plan that we have. But it's also a very simple and very common problem. This is not an esoteric problem with a computer. I mean, this happens. It does happen. Every computer manufacturer has to solve this problem. That's right. They do, and they solve it as best they can on a continuous, fast-changing basis. I mean, this is a dynamic industry. This is not the automobile industry. The laptops from five years ago are very different than the laptops here. And the defect that he alleged, it's not that they just overheat. That's what he said the first time, and Judge DeSalle tells it. That is not enough. Come back with a real defect that ties all four of your models together. And then the best he could come up with was that there are vents on the bottom, and they collect lint. Other than Apple computers, I'm not sure there's any laptop computers that have their vents anywhere than on the bottom of the computer. The defect itself strains credulity, and it's implausible. But, you know, in this case, there's no dispute that the product functioned as warranted and that he could have bought up to a three-year warranty and chose in order to save money not to. That makes his expectation an economic expectation, exactly the expectation that Seeley, the California Supreme Court, and Seeley says you have to take the risk that your economic expectations will fail. Carl, with his abstract concept, let's take his really fanciful example, that there's a fancy chip that on day 366 turns it off, and the only way you can get it turned back on again is to pay $1,000. That's not disclosed. The warranty is for a year. You get to the one day after the warranty. The chip operates as designed by the manufacturer. The thing turns off, and he calls them up and says, well, send me a check, and I'll tell you how to fix it. Now, you're not going to tell me in that circumstance that the fact that there was a one-year warranty protects the manufacturer. I'm not going to tell you that. So the question really is then what did the manufacturer know about the malfunction, and what did the manufacturer lead the consumer to expect? I don't agree with that. In a chip case, in an extreme case, I think then I trust the California courts and the federal courts to find a way to get to liability because that's a different kind of case. But you see, what happened here is once you concede his point, which I think you have to, then it all becomes, well, how certain is all of this? How much did the manufacturer really know, and what was the reasonable expectation either induced by the manufacturer or that the manufacturer knew the consumer had to have? Now, your case, even taking it with their allegations, is far, far weaker for them than the case that he's just hypothesized. And the real question is how close to the hypothesized case is this one based on the pleading? Very, very far would be the short answer. And not surprisingly, that's my answer. But I also think we're not without some guidance. I think it's footnote three of Dougherty. The plaintiff there tried to get around the express warranty by saying this is bad faith, and maybe that shifts the duties a little bit. And the court said just alleging that the manufacturer knew at the time of sale of the defect doesn't get you to bad faith. So I think that's some guidepost that you're going to have to get something better than knowledge at the time of sale, which, of course, in this case we lack. There is not an allegation that Alienware knew at the time of sale. The allegation is that Alienware knew or was reckless in not knowing. The kind of allegation you're going to see in every one of these cases if this court doesn't hold the line on Barden and Dougherty. There's nothing in the allegations that take this case outside of Barden and Dougherty other than some talismanic, formulistic additions like, well, in Barden and Dougherty, if they had alleged that cars last longer than three years, that cases would have come out differently. I don't think that's a fair read of what those cases hold. Thank you. Okay. Thank you. Your Honor, with your permission, just two points, if I may. The first has to do with nine. Before you get to your two points, let me ask you something. The other side, just quoted accurately from your complaint, where you allege knew or should have known. Right. Is knew or should have known enough for fraud? Well, I think probably that's a remnant, frankly, from when these cases were brought in state court. You have to remember that all these cases typically historically have been brought in state court. I think recklessness at a minimum. At the time you drafted that complaint, you were in federal court. That's right. That's correct, Your Honor. So I'm asking you again, is knew or should have known a sufficient allegation of scienter for fraud? The scienter allegation under California law and under federal law, actually, pleading standards can be averred generally. I do think it's got to be known. Fraud, 9b. Right. But the scienter element the case law holds can be averred generally. And I believe Vess says that. If not Vess, another one of the cases from this court does say that. But I think your question is right. Should have known is probably not enough. Whatever Vess said was right. Right. I figured. But certainly knowledge is enough. Whether recklessness gets you there, frankly, Your Honor, I can't answer that honestly today. I think probably recklessness does, but I'm not aware to it. I've deflected you from your two points. Sure. Two points. One was actually on 9b. We do make the specific allegations as specifically as possible, things like we would have been in a position to know. If you look through paragraphs, I think it's 91 to 94, but it's in the briefing. We do allege with as much specificity as possible each of the elements, the who, what, when, where, why. By the way, I think this is just a clerical problem. In the excerpts of record, your complaint is missing several pages. We can certainly get you. We've got the full record. I can find it. But as I was preparing the case this morning, there were two gaps of about three pages each in the complaint and the excerpts. I stand embarrassed and apologize. I can deal. I want to get back to the broader point, and that's really my second point. The Clemens case says claims regarding buyer expectations and the manufacturer's state of mind properly sound in fraud and implied warranty. And that's what our claims are about. Now, you raised in the Long v. Hewlett-Packard the implied warranty question. Why don't we have an implied warranty claim? Why isn't that adequate? Why do we need fraud? There's three reasons. Number one, under California law, the implied warranty ends at one year. So for any product that you have an expectation is going to last more than one year, a durable good, you're out of luck. The second is California, oddly, still requires, at least arguably, privity. So that's fine in our case. We have privity. But in many consumer contexts, you're not going to have privity because they're going to have bought through an intermediary. Third and last point, you can disclaim implied warranties, manufacturers under certain circumstances. That's why the distinction here is so critical. What they're proposing to do, consumer protection law fills a void between tort law, which addresses safety defects, and warranty law, which addresses failures within the warranty. The consumer protection law fills that void. And if they're right, California consumer protection law doesn't exist for these types of claims. Thank you, Your Honor. Thank you both. Nice arguments in these last couple of cases, which we appreciate. Ostrager v. Alienware Corporation now submitted for decision, and we are adjournment until tomorrow morning.
judges: Nelson, Fletcher, Tallman